IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEPHON DAVISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:20-cv-402-JTA |
| ) | (WO) |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<ins>MEMORANDUM OPINION AND ORDER</ins>**

Pursuant to 42 U.S.C. § 405(g), the claimant, Stephon Davison, brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Davison's claim for a period of disability, for disability insurance benefits ("DIB"), and for Supplemental Security Income ("SSI"). (*Id.*) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 8, 9.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be REVERSED and this matter be REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (Doc. No. 15.)

I.      PROCEDURAL HISTORY AND FACTS

Stephon Davison[2] ("Davison") was born on May 27, 1963 and was 55 years old at the time of his alleged disability onset date. (R. 30.) He completed the tenth grade, and his work history consists of employment as a heavy equipment operator. (*Id*.) On October 2, 2018, he was admitted to the hospital complaining of numbness in his upper and lower extremities, hypertensive emergency and polysubstance abuse. (R. 31.) At the time of discharge from the hospital, he was diagnosed with resolved transient ischemic attack ("TIA"), hypertension, prediabetes, diastolic dysfunction, polysubstance and tobacco use. (R. 31, 34, 401-410.) Since that date, he has worked only two weeks during February of 2019, but he claims that his doctor advised his work activities could trigger another TIA. (R. 49.) He has since been diagnosed with Type II diabetes and neuropathy. (R. 32.)

On October 9, 2018, Davison applied for a period of disability and DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. (R. 25.) He also filed for SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, on November 20, 2018. (*Id.*) Davison alleges a disability onset date of October 31, 2018. (R. 25.) His applications were denied on February 14, 2019, and he requested an administrative hearing. (*Id.*)

Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Davison's request for benefits in a decision dated February 27, 2020. (R. 22-36.) Davison requested review by the Appeals Council. (R. 13.) On April 22, 2020, the Appeals Council

---

[2] Although the Complaint in this case (Doc. No. 1) refers to the plaintiff as "Stephon Davison," the decision of the Administrative Law Judge and other documents refer to him as "Stephon Davidson." The Court refers to plaintiff hereinafter as "Davison."

denied the request for review and the decision by the Commissioner became final. (R. 1-3.) On June 12, 2020, Davison filed the instant action appealing the decision of the Commissioner. (Doc. No. 1.)

## II. STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III. STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled. *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity

---

[3] Although DIB and SSI are separate programs, the law and regulations governing claims under the respective programs are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining disability. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number

of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Davison has not engaged in substantial gainful activity since the alleged disability onset date of October 31, 2018. (R. 27.) The ALJ determined that Davison suffers from the following severe impairments: history of TIA, diabetes with neuropathy, and polysubstance abuse. (R. 27.) Davison's hypertension, hyperlipidemia, reported history of gout, left ventricular hypertrophy and impaired relaxation, depressive disorder, and personality disorder were categorized as non-severe impairments. (*Id.*) The ALJ concluded that Davison's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29.)

After consideration of the entire record, the ALJ determined that Davison has the RFC to perform a full range of work at all exertional levels. (R. 29.) However, the ALJ found Davison's history of substance abuse, "by itself or in combination with other impairments," justifies restricting exposure to hazards in the workplace or operation of motorized vehicles. (R. 28.) The ALJ found the following:

> [He] has the residual functional capacity to perform a full range of work at all exertional levels, but would have certain nonexertional limitations. The claimant can perform work at all exertional levels. He can perform tasks not involving the operation of motorized vehicles and tasks not involving exposure to workplace hazards such as unprotected heights or dangerous moving machinery.

(R. 29.)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Davison was precluded from performing any of his past relevant work. (R. 35.) The ALJ also found that based upon Davison's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that he can perform. (R. 35.) The ALJ further found that Davison could work as a small products assembler, injection molding machine operator, and fast-food worker. (R. 36.) The ALJ concluded that Davison had not been under a disability, as defined in the Social Security Act, from October 31, 2018, the alleged onset date, through the date of the decision. (R. 36.)

## V. DISCUSSION

Davison presents three arguments on appeal. First, he argues the ALJ failed to identify and consider the functional limitations resulting from his severe impairment of diabetes with neuropathy before articulating his RFC. (Doc. No. 13 at 4.) Second, he argues the ALJ failed to follow Social Security Ruling ("SSR") 96-8p by not articulating a function-by-function analysis of his work-related abilities. (*Id*. at 8.) Third, he argues that, had the ALJ's RFC included the appropriate functional limitations, a finding of disabled would have been directed by Medical-Vocational Guideline Rule 201.01 of 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* at 7.)

The Court evaluates each of Davison's arguments below.

 A. The ALJ failed to discuss the functional limitations caused by Davison's diabetes with neuropathy.

Davison asserts the ALJ's conclusion that he has no exertional limitations is "inconsistent" with the finding of a severe impairment at step two. (Doc. No. 13 at 4.). He

cites several cases that establish that an impairment is not severe if it would not be expected to interfere with an individual's ability to work, would have only a minimal effect on the ability, or would be amenable to medical treatment—apparently inviting the conclusion that a severe impairment necessarily impacts an individual's capacity to work.  (*Id.* at 4-5.)

The Commissioner responds that there is no basis for the proposition that a finding of a severe impairment must automatically result in certain limitations in the RFC finding. (Doc. No. 14 at 6.)  The Commissioner asserts that limitations in the RFC are based on what the evidence shows the claimant with an impairment can do or cannot do.  (*Id.* at 7.) Finally, the Commissioner points out that Davison bases his argument solely on the presence of a severe impairment without any reference to evidence of an inability to perform work at all exertional levels.  (*Id.* at 7.)

In finding that Davison has the RFC to perform a full range of work at all exertional levels, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (R. 29.)  At the administrative hearing, Davison testified that he experiences tingling in his right foot and numbness in his right toe that is worsened by walking.  (R. 57-58.)  His complaints about right foot tingling were also noted in several visits to the doctor; however, the evidence indicates that he consistently presented with a normal gait, stance, and ambulation.  (R. 33-34, 660, 664, 667, 680.)  The record further indicates that an August 2019 clinical assessment yielded the opinion of the treating nurse practitioner that pain was present but did not prevent functioning in work activities nor seriously interfere with work tasks.  (R. 34, 677.)

Upon consideration of the record, the ALJ determined that Davison could perform work at all exertional levels, with a nonexertional limitation prohibiting tasks involving the operation of motorized vehicles or involving exposure to workplace hazards such as unprotected heights or dangerous moving machinery. (R. 29.) That nonexertional limitation was specifically linked to Davison's history of substance abuse. (R. 28.) The ALJ neither stated that Davison's diabetes with neuropathy is included in the nonexertional limitation, nor explained why or how the diabetes with neuropathy could have "more than a minimal effect on his capacity to perform basic work activities" yet not result in any limitations. (*See* R. 27-29.) As a result, it is unclear what functional limitations, if any, the ALJ associated with Davison's diabetes with neuropathy.

The Court is not persuaded by Davison's argument that a severe impairment must be linked to a specific functional limitation in the RFC. As the Commissioner correctly argues, the Eleventh Circuit in *Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 858, 860 (11th Cir. 2014), determined that "so long as the ALJ's RFC finding is supported by substantial evidence, there is no requirement to include any particular functional limitations, regardless of a claimant's severe impairments." (Doc. No. 14 at 7.) Notably, however, in *Davis-Grimplin*, the district court had previously remanded the case in part so the ALJ could identify the functional limitations caused by Davis' bilateral carpal tunnel syndrome. *Davis-Grimplin*, 556 F. App'x at 860, n.3. After the case returned to the district court from the remand, the district court and the Eleventh Circuit found that the ALJ complied with the Remand Order because "[t]he ALJ had ample evidence on which to conclude that Davis did not have functional limitations of her hands notwithstanding that

9

her bilateral carpal tunnel syndrome is a severe impairment. . . . Moreover, as the Remand Order required, he thoroughly explained his reasons for not including a functional limitation of the hands in his question to the VE." *Id*. at 863.

In addition, the United States District Court for the Middle District of Florida very recently considered and rejected the proposition that a severe impairment must be linked to a specific limitation in the RFC. *See Mancini v. Comm'r of Soc. Sec.,* No. 2:19-CV-798-JLB-NPM, 2021 WL 1087270, at *1 (M.D. Fla. Mar. 22, 2021) (stating that the proposition was inconsistent with the claimant's "de minimis" burden of proving the severe impairment).

Here, the ALJ determined that Davison's diabetes with neuropathy was a severe impairment. (R. 27.) "By definition, a severe impairment limits significantly a claimant's ability to do basic work activities." *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). Nevertheless, the only limitations the ALJ discussed in Davison's RFC were nonexertional and were related to Davison's history of substance abuse. (R. 28, 29, 34, 35.) The ALJ's analysis thus fails to discuss how Davison's diabetes with neuropathy might affect his ability to perform work. In other words, it is unclear from this record whether the ALJ neglected to consider the diabetes with neuropathy, believed that any functional limitations attributable to the diabetes with neuropathy were subsumed within the limitations caused by Davison's other severe impairments, or did not believe there were any functional limitations attributable to the diabetes neuropathy whatsoever. *See Mancini,* 2021 WL 1087270 at *1.

"The Court should not be left to speculate about the functional impact of [Davison's diabetes with neuropathy] or whether such was fairly a part of the RFC assessment made by the ALJ." *Id.* at *9.  The ALJ's failure to address the impact of Davison's diabetes with neuropathy, if any, on his RFC warrants remand.  The Court finds that substantial evidence does not support the ALJ's RFC findings because the ALJ did not meaningfully conduct the proper legal analysis about the effect of Davison's diabetes with neuropathy on his RFC.  *Raduc*, 380 F. App'x at 899 (citation omitted).  Accordingly, this case is due to be remanded under 42 U.S.C. § 405(g) for the ALJ to clarify the impact of Davison's diabetes with neuropathy on his RFC.  *See Raduc*, 380 F. App'x at 898 (reversing denial of disability benefits because the ALJ found IBS to be a severe impairment, but "the ALJ's analysis fails to discuss how IBS might affect [the claimant's] ability to perform her job duties").

B.  The ALJ complied with SSR 96-8p by considering Davison's functional limitations based on the medical record as a whole.

Davison next alleges that the ALJ "never performed" the function-by-function analysis of his work-related abilities prior to determining that he could perform heavy work as required by SSR 96-8p.  (Doc. No. 13 at 5.)  Davison cites several cases to advance the proposition that an RFC is not supported by substantial evidence where the ALJ does not make a function-by-function analysis.[4]

---

[4] It appears that Davison is advancing the proposition that the function-by-function analysis must be specifically articulated by the ALJ in order to satisfy the requirements of SSR 98-6p.  Indeed, the Commissioner responded as though that were the argument being made.  It is odd then that Davison relied heavily on *Freeman v. Barnhart*, 220 F. App'x 957 (11th Cir. 2007) and *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863 (11th Cir. 2011), wherein both cases the Eleventh Circuit concluded that the ALJ appropriately met the requirements of SSR 98-6p without specifically articulating a function-by-function analysis.

11

The Commissioner responds that the ALJ was not required to articulate Davison's limitations on a function-by-function basis because he did not express Davison's RFC by designating an exertional level. (Doc. No. 14 at 8.) The Commissioner therefore asserts that where there are no exertional limitations, there is no requirement for a function-by-function analysis so long as the ALJ sufficiently articulates the RFC and the basis for it. (*Id.*)

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184. The ALJ complies with SSR 96–8p by considering the claimant's functional limitations and restrictions before proceeding to express his RFC in terms of exertional levels. *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007). The ALJ need not exhaustively reference each piece of evidence in his decision if there is sufficient basis to conclude that the ALJ considered the claimant's medical condition as a whole. *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).[5]

Here, the ALJ considered "all of the evidence and found that it did not support the level of disability [] claimed." *Freeman*, 220 F. App'x. at 960. While Davison points to

---

[5] As noted in *Hale v. Colvin*, No. 14-00222, 2015 WL 3397939, at *14 n.18 (S.D. Ala. Apr. 24, 2015), *report and recommendation adopted*, No. CIV.A. 14-0222-CG-N, 2015 WL 3397628 (S.D. Ala. May 26, 2015), several courts in the Eleventh Circuit have found *Castel* and/or *Freeman* to be instructive in addressing claims of error based on SSR 96–8p's "function-by-function" assessment requirement.

his neuropathy diagnosis and abnormal monofilament wire tests from the August 2019 medical visit, the ALJ relied on the "Clinical Assessment of Pain" completed by CRNP Constance Belser as part of that same visit. (R. 34, 677.) In reaching his conclusion about Davison's RFC, the ALJ compared Davison's claims regarding the intensity, persistence, and limiting effects of his symptoms to evidence in the record such as doctors' opinions, medical tests, and medical diagnoses. (R. 34-35.) Specifically, he summarizes Nurse Belser's August 2019 clinical assessment in this way:

> Physical activity would increase [Davison's] pain some, but not to such an extent as to prevent adequate functioning in such activities as walking, standing, sitting, bending, stooping, and moving of extremities . . . . She opined that [Davison] may experience pain, but that it would not be of such as degree to seriously interfere with work tasks.

(R. 33.) It is therefore evident that the ALJ considered Davison's general functional limitations and restrictions prior to concluding that he had the RFC to perform at all exertional levels.

Further, the ALJ's decision reflects that he considered Davison's medical history as a whole. (*See* R. 30-35.) The ALJ stated that Davison's "statements about the intensity, persistence, and limiting effects of his history of [TIA], diabetes with neuropathy, and polysubstance abuse [] are not disabling because this assertion is not consistent with the substantial objective medical evidence of record." (R. 34.) The decision goes on to specify that all medical findings such as CT scans and MRIs were consistently normal, and though at times his blood pressure readings reflected a lack of control, Davison has an "overwhelming" record of noncompliance with medication and treatment. (*Id.*) Finally, although he has one abnormal monofilament wire test and his complaints about right foot

tingling were also noted in several visits to the doctor, the record indicates that he consistently presented with a normal gait, stance, and ambulation. (R. 32-34, 660, 664, 667, 680.)

The ALJ reached his conclusions after consideration of Davison's functional limitations and restrictions based on both Davison's testimony and the medical record as a whole. (R. 34.) He stated the reasons that he found Davison's testimony to be only partially consistent with the medical record. (*Id.*) Thus, the ALJ met the standards articulated in *Freeman* and *Castel* for performing a function-by-function analysis, and this Court concludes that the ALJ complied with SSR 96-8p.

> C. The Court's assessment of the ALJ's application of the Medical-Vocational Guidelines is premature without clarification of the functional limitations associated with Davison's diabetes with neuropathy.

Davison alleges that the VE's identification of only light and unskilled jobs for a hypothetical person such as Davison implies that the failure of the ALJ to correctly assess his exertional limitations adversely affected the possibility that the Medical-Vocational Guidelines ("the Guidelines"), 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.01, would have directed a finding of disabled. (Doc. No. 13 at 7.) The Commissioner responds that the application of the Guidelines is inappropriate because Davison has only nonexertional limitations. (Doc. No. 14 at 9.)

In a disability determination, once the claimant has shown that he has a severe impairment, the burden shifts to the Commissioner to show that the claimant can perform any other kind of substantial gainful work considering his age, education, and work experience. *Sryock v. Heckler,* 764 F.2d 834, 835-36 (11th Cir. 1985). The ALJ has two

14

resources to help him determine whether the claimant has the ability to adjust to other work in the national economy—the Guidelines or the testimony of a VE. *Watson v. Astrue*, 376 F. App'x 953, 956 (11th Cir. 2010).

The Guidelines do not include a set of rules for a claimant who can perform heavy or very heavy work because "[i]ndividuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work—either of which would have already provided a basis for a decision of 'not disabled.' " 20 C.F.R. pt. 404, subpt. P, app. 2 § 204.00. Furthermore, where the claimant's work limitations are purely nonexertional, even if the limitations are significant, the Guidelines do not compel a finding. *Id.* at § 200.00(e)(1). Where a claimant's limitations do not fall within a rule or where his limitations are purely nonexertional, the ALJ must consult a VE to determine whether there are jobs in the national economy that the claimant can perform. *Watson*, 376 F. App'x. at 957.

Here, the ALJ determined that Davison has only nonexertional limitations. (R. at 28, 35.) Because the ALJ identified no exertional limitations, the Guidelines compelled neither a finding of disabled nor not disabled for his circumstances. *See* § 200.00(e)(1). Therefore, the ALJ appropriately consulted the VE for a determination of whether there are jobs in the national economy that a person such as Davison could perform. The ALJ described a hypothetical person who could perform work at all exertional levels but could not operate motor vehicles or be exposed to unprotected heights or dangerous moving machinery. (R. 61.) The VE testified that such a person could not perform Davison's past

work of heavy equipment operator but proceeded to identify a number of jobs the person could perform. (R. 62.) All of the jobs identified were light jobs. (*Id.*)

Assuming without deciding that the ALJ correctly made the RFC determination, there is no error in his use of the Guidelines or use of the VE's testimony in finding that there are a number of jobs in the national economy to which Davison can transition. The VE's identification of only light jobs is reflective only of Davison's limitations on working around unprotected heights or dangerous machinery and on operating a motor vehicle. And, while the ALJ may use the Guidelines as a framework for making a disability determination, he is not required to do so. *Watson*, 376 F. App'x. at 957-58.

Yet, Davison has raised legitimate questions about what limitations the ALJ associated with his diabetes with neuropathy. He further speculates that, had the ALJ identified the limitations, they would be exertional. (*See* Doc. No. 13 at 7.) The failure of the ALJ to articulate how the diabetes with neuropathy impairs Davison's ability to work, if any, stunts the Court's ability to analyze further whether the Guidelines were appropriately applied to Davison's particular circumstances. Because the Court is remanding this case for the ALJ to clarify the impact of Davison's diabetes with neuropathy on his RFC, the ALJ also will have an opportunity to revisit the appropriate application of the Guidelines to Davison's circumstances.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Therefore, it is hereby

ORDERED that the decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is REMANDED for further proceedings consistent with this opinion.

A separate judgment will be issued.

DONE this 14th day of March, 2022.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE